UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**STATE OF LOUISIANA, ET AL.**                 **CIVIL ACTION**
**ON BEHALF OF**
**INSURED(S)/ASSIGONOR(S)/**
**SUBROGOR(S): ERICKA AND**
**RICHARD TOTORICO**

**VERSUS**                                    **NO: 13-3536**

**AMERICAN NATIONAL PROPERTY**       **SECTION: "S" (3)**
**AND CASUALTY COMPANY,**
**AMERICAN NATIONAL GENERAL**
**INSURANCE COMPANY AND**
**ANPAC LOUISIANA INSURANCE**
**COMPANY**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that this matter is **REMANDED** to the Civil District Court, Parish of Orleans, State of Louisiana for lack of subject matter jurisdiction.

### BACKGROUND

This matter is before the court to examine whether this court has subject matter jurisdiction over this action. This action was severed from the proposed class action, <u>Louisiana v. AAA Ins.</u>, Civil Action No. 07-5528, in the United States District Court for the Eastern District of Louisiana. The factual background and procedural history of this case were described in <u>Louisiana v. AAA Ins.</u>, 2011 WL 5118859, at *1-3 (E.D. La. 10/28/2011) (Barbier, J.) as follows:

> In the aftermath of Hurricanes Katrina and Rita, the State of Louisiana, with funding from the United States Department of Housing and Urban Development, created the Louisiana Road Home program. The program was designed to distribute federal grants to assist Louisiana residents in their efforts to reconstruct homes damaged by the Hurricanes. To date, it is the largest single housing recovery program in United States history.[FN1]

FN1. *See* The Road Home, *About Us,*
https://www.road2la.org/about-us/default.htm
(last visited October 17, 2011).

The Road Home program is administered by the State of Louisiana through the Louisiana Recovery Authority. Consistent with federal law, Road Home prohibits the distribution of grant funds that would duplicate payments from other sources. Accordingly, Louisiana required any homeowner receiving Road Home funds to execute a limited subrogation/assignment agreement as part of the grant closing process, assigning his rights against his insurer to the State in the amount of the Road Home grant. This allowed the State to proceed against the insurers to recover Road Home funds used to pay for losses covered by the grantee's insurance.

The case before the Court, termed the "Road Home Litigation." was initiated by the State of Louisiana in August 2007 in Orleans Parish Civil District Court. The State sought to recoup the funds from over 200 insurers to which Road Home recipients were entitled that had been assigned to the State pursuant to the subrogation/assignment agreements. At the time the State initiated this action, many Road Home applications remained unprocessed, and thus, thousands of applicants had not executed subrogation agreements or filed claims against their insurers for losses sustained as a result of the Hurricane. Louisiana law provided that all Hurricane Katrina-related insurance claims must be filed by September 1, 2007 deadline. Aware of this deadline, the State amended its petition and added a class action against the same defendant insurers in order to preserve the rights of those applicants whose applications would be approved in the future, and thus to further preserve its own rights to bring claims which the grant recipients would subsequently assign to the State. The putative class members consisted of

> "[a]ll current and former citizens of the State of Louisiana who have applied for and received or will receive funds through the Road Home Program, and who have executed or will execute a subrogation or assignment agreement in favor of the State, and to whom insurance proceeds are due and/or owed for damages sustained to any such recipient's residence as result of any natural or man-made occurrence associated with Hurricanes Katrina and/or Rita under any policy of insurance, as plead herein, and for which the State has been or will be granted or be entitled to recover as repayment or reimbursement of funds provided to any such recipient through the Road Home Program." Rec. Doc. 1–1, pg. 21.

On behalf of the state and the homeowner class members, the class action sought damages, injunctive relief, and a declaration of these insurers' duties under the "all risk" policies issued to class members. On September 11, 2007, Defendants removed this case to Federal Court, asserting that federal jurisdiction was proper under the Class Action Fairness Act ("CAFA"). The case was consolidated with the *In re Katrina Canal Breaches Consolidated Litigation* ("Katrina Canal Breaches Litigation") the next day. In response to the removal, Plaintiff filed a motion to remand, which was denied by Judge Duval. The State appealed this decision, asserting that CAFA was inapplicable, and that even if it did apply, the Eleventh Amendment barred Defendants from removing a state law action brought by a state in its own courts. The Court of Appeals affirmed Judge Duval's order denying the State's motion to remand on April 11, 2008.

In November of 2008, the State filed a Motion to Sever its class allegations in the Road Home Litigation, along with a Second Motion to Remand its subrogation claim. While these motions were pending, certain defendants in the Master Complaint of the Katrina Canal Breaches Litigation, filed a motion to strike the class allegations. Although this motion did not target the class status in the Road Home Litigation, the State filed a stipulation stating that the class action portion of the Road Home litigation was substantially similar to the class allegations in the Master Complaint. Accordingly, the State agreed that its class allegations would be bound by whatever ruling Judge Duval issued on class status in the Katrina Canal Breaches Litigation Master Complaint.

Judge Duval denied the State's Motion to Sever the class action claims, as well as its Second Motion to Remand. Defendants thereafter filed a Motion to Dismiss based in part on their belief that "anti-assignment" clauses in their contracts prevented their clients from assigning the benefits of the insurance contracts to the State. Judge Duval granted this motion in part on March 5, 2009, dismissing the State's extra-contractual claims and claims for declaratory relief, but finding that the anti-assignment clauses did not bar the State's subrogation claim. Defendants thereafter filed a motion for reconsideration, which Judge Duval denied on April 16, 2009. Judge Duval certified his ruling for interlocutory appeal and stayed the proceedings pending the outcome of the appeal. This case was then deconsolidated from the Katrina Canal Breaches Litigation and transferred to this Court [Judge Barbier] for disposition on April 17, 2009.

On June 16, 2009, Judge Duval issued an order dismissing the class action in the master complaint in the consolidated Katrina Canal Breaches Litigation. This order effectively dismissed the class allegations in the Road Home Litigation by virtue of the State's stipulation agreeing to be bound by that ruling. As a result, the State filed a Third Motion to Remand these proceedings to state court. Because Judge Duval had previously stayed the proceedings pending the Fifth Circuit's ruling on the

3

enforceability of the anti-assignment clauses, however, this Court enforced the stay and denied the State's motion without prejudice.

The Fifth Circuit, finding the issue of the enforceability of the anti-assignment clauses to be dispositive but unclear under Louisiana law, certified the question to the Louisiana Supreme Court. The Louisiana Supreme Court responded that Louisiana's public policy did not preclude the enforceability of anti-assignment clauses to post-loss assignments, but cautioned that the language of the clause "must clearly and unambiguously express that it applies to post-loss assignments" and must therefore be evaluated on a policy by policy basis. Accordingly, unable to resolve the issue en masse, the Fifth Circuit vacated the district court's previous ruling on the motion to dismiss, and remanded the case for further proceedings.

After the stay was lifted, the State filed a motion to remand, arguing, in part, that the court no longer had subject matter jurisdiction under CAFA because the class allegations were dismissed. In denying the Motion to Remand, Judge Barbier noted that the United States Court of Appeals for the Fifth Circuit found that CAFA subject matter jurisdiction existed over the Road Home Litigation when it was removed. Id. at *5 (citing In re Katrina Canal Breaches, 524 F.3d 700, 705-12 (5th Cir. 2008)). He also noted that CAFA's text "does not explicitly state whether the certification of a class following is required in order for federal jurisdiction to exist," but that "[t]he plain language of CAFA supports the interpretation that CAFA jurisdiction is not dependent upon class certification." Id. at *5-6. Further, the "[t]he Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all held that a court retains jurisdiction over a case filed or removed under CAFA even if class certification is denied." Id. at * 5 (citing Metz v. Unizan Bank, 649 F.3d 492, 500-1 (6th Cir. 2011); Charter Corp. v. Learjet, Inc., 592 F.3d 805, 506 (7th Cir. 2010); Buetow v. A.L.S., Enters., Inc., 650 F.3d 1178, 1182 n.2 (8th Cir. 2011); United Steel Workers Int'l Union v. Shell Oil Co., 602 F.3d 1087, 1092 (9th Cir. 2010); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009)). After reciting the principles that "[f]ederal courts examine jurisdictional facts as they exist at the time the case was filed," that "[i]n cases removed from state court under § 1332, jurisdictional requirements

4

must also be satisfied at the time of removal," and that "[o]nce jurisdiction is properly established, subsequent events will not divest the court of jurisdiction," Judge Barbier found that this court retained jurisdiction over the Road Home Litigation after the class allegations were dismissed. Id. at *6-8 (citing Grupo Dataflux v. Atlas Global Gorup, L.P., 124 S.Ct. 1920, 1924 (2004); Coury v. Prot, 85 F.3d 244, 248-49 (5th Cir. 1996); Freeport-McMoRan, Inc. v. K N Energy, Inc., 111 S.Ct. 858, 860 (1991)).

Thereafter, a case management order was issued which noted that the State had more than 100,000 assignment/subrogration claims against more than 200 insurance companies that needed to be assessed individually, and that "[t]he prospect of misjoinder requiring severance looms large." The order outlined a plan for assessing the claims and engaging in settlement negotiations, while staying discovery.

In April 2013, the United States Magistrate Judge issued an order severing the Road Home Litigation into individual suits, stating that the Supreme Court of Louisiana held that each assignment/subrogration claim needed to be analyzed individually based on the policy language. The severance order required the State to file separate amended complaints for each insured/assignor/subrogor, and those cases were given new captions and case numbers and randomly allotted among the judges in the United States District Court for the Eastern District of Louisiana. The State was required to serve each new amended complaint and/or obtain a waiver of service from the defendants. Further, the severance order required that substantive motions pending in the original case must be refiled in the newly assigned cases if any party sought to pursue the motions.

On July 8, 2013, Judge Barbier denied a motion to reconsider the severance order filed by defendants American National Property and Casualty Company, American National General

5

Insurance Company and ANPAC Louisiana Insurance Company (collectively "ANPAC"). Thereafter, ANPAC filed a petition for a writ of mandamus with the United States Court of Appeals for the Fifth Circuit seeking to set aside of the severance order. On July 23, 2013, ANPAC filed, in the district court, a motion to stay the execution of the severance order and a motion to dismiss all of the severed actions, arguing that the complaints did not conform to the dictates of the severance order. On August 5, 2013, Judge Barbier denied ANPAC's motion to stay. On August 7, 2013, the United States Court of Appeals for the Fifth Circuit denied ANPAC's petition for a writ of mandamus. Then, on August 15, 2013, Judge Barbier denied ANPAC's motion to dismiss, noting that such motions needed to be filed in each of the severed cases.

In the amended complaint that initiated this separate action, the State alleged that this court lacks subject matter jurisdiction over the action because "1) The claims of this/these particular insured(s)/assignor(s)/subrogor(s) do not satisfy all of the requirements under CAFA for federal jurisdiction; and 2) the amount in controversy for the claims of this/these particular insured(s)/assignor(s)/subrogor(s) do not exceed the sum of $75,000." Further, the amended complaint does not contain any class allegations. As a result, this court issued an order asking the parties to show cause whether this court has subject matter jurisdiction over this action.

ANPAC argues that CAFA confers subject matter jurisdiction over the severed action. ANPAC contends that the United States Court of Appeals for the Fifth Circuit held that CAFA jurisdiction existed in this action when it was removed, and that subject matter jurisdiction survives post-removal events, including severance of the consolidated action. The State argues that the claims were misjoined from the inception of the case, therefore CAFA jurisdiction was never proper.

6

Alternatively, the State argues that there must be an independent basis for subject matter jurisdiction in each of the severed actions, which does not exist.

## ANALYSIS

CAFA provides that the district court has diversity subject matter jurisdiction over a "class action" in which the parties are minimally diverse and there is $5,000,000 aggregate in controversy. 28 U.S.C. § 1332(d)(2). A "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." Id. at § 1332(d)(1)(B).

CAFA is an extension of diversity subject matter jurisdiction. In re Burlington N. Santa Fe Ry., 606 F.3d 379, 381 (7th Cir. 2010). Thus, the usual rules for analyzing diversity subject matter jurisdiction apply to CAFA cases. See id. Indeed, the Senate Judiciary Committee noted that although

> questions regarding events occurring after a complaint is filed or removed to the federal court will, of course, arise under [CAFA], those same (or, at least, very similar) questions arise in current practice on jurisdictional issues . . . the "rules of the road" on such issues are already established, and [CAFA] does not change them.

S. Rep. No. 109-14, at 70-72, *reprinted in* 2005 U.S.C.C.A.B. 3, 65-67.

In a diversity case removed from state court to federal court, subject matter jurisdiction is assessed according to the jurisdictionally significant facts as they existed at the time of removal, and "later changes that compromise diversity do not destroy jurisdiction." Burlington N. Santa Fe Ry., 606 F.3d at 381. The Senate Judiciary Committee confirmed that the time of removal rule applies in CAFA cases:

> Current law (that [CAFA] does not alter), is also clear that, once a complaint is properly removed to federal court, the federal court's jurisdiction cannot be ousted by later events . . . If a federal court's jurisdiction could be ousted by events

> occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court . . .

S. Rep. No. 109-14, at 70-71.  Applying these principles, the the Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all held that a court retains jurisdiction over a case filed or removed under CAFA even if post-removal events appear to compromise subject matter jurisdiction. See Metz, 649 F.3d at 500-1; Charter, 592 F.3d at 506; Buetow, 650 F.3d at 1182 n.2; United Steel Workers, 602 F.3d at 1092; Vega, 564 F.3d at 1268 n. 12.

In a footnote in Vega, 564 F.3d at 1268 n. 12, the United States Court of Appeals for the Eleventh Circuit, citing Cooper v. R.J. Reynolds Tobacco Co., 586 F.Supp.2d 1312, 1318-22 (M.D. Fla. 2008), stated that "jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of jurisdiction."  However, when the United States Court of Appeals for the Ninth Circuit quoted Vega in United Steel Workers, it deleted "severance" as a post-removal event that could not deprive the federal court of jurisdiction. United Steel Workers, 602 F.3d at 1091 ("post-removal events [(including non- or de-certification)] do not deprive federal courts of subject matter jurisdiction"). Thus, it appears that the United States Court of Appeals for the Eleventh Circuit and the United States Court of Appeals for the Ninth Circuit disagree about whether severance can deprive a federal court of subject matter jurisdiction under CAFA.

Two rules of the Federal Rules of Civil Procedure address severance . Rule 21 of the Federal Rules of Civil Procedure provides that when there is misjoinder, the court may sever any claim against a party.  Rule 42 of the Federal Rules of Civil Procedure provides that the court may order separate trials of one or more separate issues, claims, crossclaims, counterclaims, or third-party

claims for convenience, to avoid prejudice, or to expedite and economize. The difference between the rules is that separate trials of claims originally sued upon together and separated by Rule 42 "usually will result in the entry of one judgment," but claims severed by Rule 21 "become entirely independent actions to be tried, and judgment entered thereon, independently." 9A CHARLES A. WIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2387 (3d ed. 2013). Stated differently, a claim severed under Rule 21 "proceeds as a discrete unit with its own final judgment, from which an appeal may be taken." 7 CHARLES A. WIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1689 (3d ed. 2013)

In Honeywell v. Phillips Petroleum Co., 415 F.3d 429, 431 (5th Cir. 2005), the United States Court of Appeal for the Fifth Circuit held that, although subject matter jurisdiction is generally determined at the time an action commences, when an action is severed under Rule 21, "a severed action must have an independent jurisdictional basis." Thus, the court looks to the point at which the action was severed to determine whether the district court has subject matter jurisdiction over the severed claim. Id. at 432.

This case has been severed from the Road Home Litigation pursuant to Rule 21. The severance order commanded that each severed case be filed separately, and assigned a new caption, docket number and presiding judge. It further ordered that the cases be served on the defendants. The court reasoned that severance was proper because the Supreme Court of Louisiana held that each of the insurance policies needed to be independently evaluated in this litigation. The severed cases became "entirely independent actions to be tried, and judgment entered thereon, independently." 9A CHARLES A. WIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2387 (3d ed. 2013). Therefore, under the "rules of the road" in the United States

Court of Appeals for the Fifth Circuit, each severed case must have an independent basis for subject matter jurisdiction apart from CAFA. See S. Rep. No. 109-14, at 70-72; Honeywell, 415 F.3d at 431. As the complaint stated, this court does not have diversity subject matter jurisdiction because the amount in controversy does not exceed the sum of $75,000, or any other subject matter jurisdiction over this action. Each of the separate actions arose from an action that was removed to the United States District Court for the Eastern District of Louisiana from the Civil District Court, Parish of Orleans, State of Louisiana, therefore remand to the state court is appropriate due to the lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

## CONCLUSION

**IT IS HEREBY ORDERED** that this matter is **REMANDED** to the Civil District Court, Parish of Orleans, State of Louisiana for lack of subject matter jurisdiction.

New Orleans, Louisiana, this   10th day of September, 2013.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**